UNITED STATES COURT OF APPEALS
**Filed 9/30/96**
TENTH CIRCUIT

LINDON R. WELLS,

    Plaintiff-Appellant,

      v.

STATE OF OKLAHOMA ex rel.
Department of Public Safety; KENNETH
VAN HOY, individually and in his
official capacity as Commissioner of
Department of Public Safety; BOARD OF
COUNTY COMMISSIONERS OF THE
COUNTY OF OKLAHOMA; J.D.
SHARP, individually and in his official
capacity as Oklahoma County Sheriff, and
RUSSELL MAPLES, individually and in
his official capacity as Oklahoma
Highway Patrol Trooper,

    Defendants-Appellees,

      and

UNKNOWN PERSONNEL AT THE
OKLAHOMA COUNTY SHERIFF'S
DEPARTMENT, individually and in their
official capacities.

No. 95-6429
(D.C. No. CIV-95-93-A)
(W.D. Okla.)

ORDER AND JUDGMENT[*]

Before KELLY, BRISCOE, and LUCERO, Circuit Judges.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Lindon R. Wells appeals the district court's order granting defendants' motions for summary judgment in a 42 U.S.C. § 1983 action alleging excessive force in the course of an arrest and inadequate medical treatment following the arrest.  We affirm.

I.

Wells was arrested in the late evening hours of July 11, 1994, for being in actual physical control of a motor vehicle while he was intoxicated, Okla. Stat. tit. 47, § 11-902.  Trooper Russell Maples approached Wells' parked truck and Wells got out of the truck and walked toward him.  Maples noticed Wells was unsteady, his eyes were bloodshot, and he smelled of alcohol.  Maples gave Wells the opportunity to contact someone to pick up Wells and his intoxicated passenger, Donna Childer, but Wells was unable to find anyone.

Maples handcuffed Wells and Childers in a way that the handcuffs would not clamp down on their wrists.  Wells claimed that before he was handcuffed, he told Maples "that [my arm] was full of plates and screws, and I had limited movement and it would not go behind my back," Appellees' append. at 167, and that it was hurting.  Wells claimed Maples took his arms and forcefully pulled them behind his back.  Maples placed Wells in the front seat and Childers in the back seat of the patrol car.  Wells testified that he heard a "pop" and felt intense pain in his arm when he was placed in the car.  Wells complained that his arm hurt and requested that he be handcuffed with his hands in front.  According to Wells, Maples seemed unconcerned with his reported pain.  Maples testified that he used the least aggressive method of handcuffing Wells and that his complaints were typical of persons placed in handcuffs.

Maples took Childers to a detox center before taking Wells to the jail.  Maples

testified that Wells was asked during booking if he was injured or hurt and he said "No." The booking form indicated Wells had no "obvious pain or bleeding or other symptoms suggesting need for emergency service." Appellees' suppl. append. at 68. Wells did not remember being asked any of the questions on the booking form.

Wells repeatedly complained about his injury and requested pain medication while he was in jail. He was evaluated by a nurse the morning following his arrest, about nine hours after being taken into custody. The nurse testified that, although the tip of one screw had pierced Wells' skin at some point and another was visible beneath the skin, he was not bleeding. She did not think the injury required immediate attention and was only concerned with the long-term risk of infection. She determined that twice-daily wound care would be sufficient. Wells was released from jail about eleven hours after his arrest, but he did not seek medical assistance until July 23, 1994. The treating physician determined that the hardware in Wells' arm should be removed, and surgery was scheduled for September 2, 1994.

## II.

The standards relating to the disposition of a case on a motion for summary judgment are well established.

> Summary judgment should be granted where, taking the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Upon a motion for summary judgment, the moving party bears the burden of showing the absence of a genuine issue of material fact. The burden then shifts to the non-moving party to produce evidence creating a genuine issue of material fact to be resolved at trial. To avoid summary judgment, the non-moving party must present more than "a mere scintilla of evidence." There must be enough evidence to allow a reasonable jury to find for the non-moving party. The non-movant "may not rest upon mere allegations or denials" of the pleadings, but must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."

Wilson v. Meeks, 52 F.3d 1547, 1551-52 (10th Cir. 1995) (citations omitted). On appeal, we apply the same standards to determine whether summary judgment was properly entered. See Martin v. Board of County Com'rs of County of Pueblo, 909 F.2d 402, 404 (10th Cir. 1990).

As a preliminary matter, we conclude the district court was correct in granting judgment in favor of Maples and Kenneth Van Hoy in their official capacities and the State of Oklahoma. Under the Eleventh Amendment, the State of Oklahoma and its officers are immune from suit in a § 1983 action. See Meade v. Grubbs, 841 F.2d 1512, 1524-26 (10th Cir. 1988).

A. Excessive force

Wells' remaining claims against Maples and Van Hoy in their individual capacities arise solely from Maples' alleged use of excessive force during the arrest. The basis for Wells' claim is the infliction of the injury and not any allegation that Maples was deliberately indifferent to treatment of that injury or any medical need during the arrest. Compare Howard v. Dickerson, 34 F.3d 978 (10th Cir. 1994) (liability for injury arising from handcuffing arrestee with known medical restriction could be based on claim of deliberate indifference to medical need, in violation of Fourteenth Amendment). Consequently, the proper test for Wells' claims arising from the arrest itself is whether Maples employed reasonable force under the circumstances.

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the . . . standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact

-4-

that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.

As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

Graham v. Connor, 490 U.S. 386, 396-97 (1989) (citations omitted). Relevant factors in determining the reasonableness of force used by a police officer in making an arrest include the severity of the crime, whether the subject posed an immediate threat to the safety of the officer, and whether the subject was resisting arrest. Wilson, 52 F.3d at 1553. In addition, an assessment of the degree of force actually used is critical to the balancing test used to determine if the force was excessive. See Tennessee v. Garner, 471 U.S. 1, 8-9 (1985).

It is undisputed that Wells was cooperative and non-threatening when he was arrested. The crime with which Wells was charged is a misdemeanor for a first offense, punishable by ten days to one year in jail and a fine of no more than $1,000. Subsequent offenses are felonies with punishment ranging from one to ten years in prison and fines of no more than $5,000. Okla. Stat. tit. 47, § 11-902(C). If intoxicated, Wells posed a danger to himself, his passenger, and other motorists; however, the seriousness of the offense was such that Maples offered not to arrest Wells if he could contact someone to provide transportation. Maples indicated he was aware of arrestees who were placed in police cars without being properly restrained with their hands behind their backs driving off with the cars. Prior to taking Wells to jail, Maples stopped at a detox center to drop off Childers, presumably leaving Wells in the police car. Maples was also responsible for the safety of his passenger, a service manager of an automobile dealership who was riding

with him.

Although handcuffed, the degree of force used to restrain Wells was minimal. Maples testified that the handcuff technique he used was the least forceful and restrictive of the three he considered. We noted in Wilson, 52 F.3d at 1556, that "the first duty of a police officer is to ensure the safety of the officers and the public. Handcuffing is a necessary expedient to this end." We have also held that "the right to arrest an individual carries with it the right to use some physical coercion to effect the arrest." Thompson v. City of Lawrence, Kan., 58 F.3d 1511, 1516 (10th Cir. 1995).

Maples' decision at the scene of the arrest was reasonable and within the legitimate exercise of his authority. Wells cites Hansen v. Black, 885 F.2d 642 (9th Cir. 1989), which held that abnormally forceful application of handcuffs can violate an arrestee's constitutional rights. However, Hansen did not address the issue presented here--whether putting handcuffs on a potentially fragile arrestee without use of abnormal force is similarly unlawful. Under the facts presented in this case, we conclude it is not.

Because we decide Maples did not use excessive force, Wells' claim against Van Hoy, Maples' supervisor, must also fail. See Thompson, 58 F.3d at 1517.


B. Deliberate indifference to serious medical needs

Wells' claims against J.D. Sharp and the Oklahoma County Commissioners are based on the theory that Wells was not provided adequate medical attention after he was taken into custody. Wells sued Sharp in his individual and official capacity. Wells' claim against the County Commissioners clearly fails because they have no statutory duty to hire, train, supervise, or discipline county sheriffs or deputies, and cannot be held

-6-

responsible for constitutional rights violations by such officers unless they voluntarily undertake the responsibility of hiring or supervising. See Meade, 841 F.2d at 1528.

> Under the Fourteenth Amendment's due process clause, pretrial detainees . . . are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment. Thus, [an] inadequate medical attention claim must be judged against the "deliberate indifference to serious medical needs" test of Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed. 2d 251 (1976). . . .
> The analysis under Estelle is two-pronged. The initial question is whether there is evidence of "serious medical needs." A constitutional violation only occurs when a governmental official's "deliberate indifference" is exhibited toward such needs.

Frohmader v. Wayne, 958 F.2d 1024, 1027-28 (10th Cir. 1992) (citations omitted).

As defendants argue, Wells has failed to present sufficient evidence to establish the first prong of the Estelle analysis--the existence of a serious medical need. While he suffered an obvious injury to his elbow, it was sufficiently minor that no immediate medical attention was required. Wells was kept in jail less than twelve hours and, upon his release, he did not seek medical attention for eleven days. Even then, his condition was not deemed sufficiently serious to require immediate treatment and was not treated until more than a month later. The testimony of the nurse further illustrates Wells' injury was not serious. She was concerned with wound care to prevent infection and decided that attention twice each day was adequate. She testified that, although there was a break in the skin from which a screw was protruding, there were no fluids or blood and it did not require immediate attention.

Absent a showing of a serious medical need, the district court properly entered summary judgment on Wells' inadequate medical attention claims.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge