Michelle ACETO, Plaintiff,

v.

David W. KACHAJIAN, and Paul
Lavoie, Defendants.

No. CIV.A. 01–11420–PBS.

United States District Court,
D. Massachusetts.

Jan. 24, 2003.

James Karathanasis, Hyannis, MA, John B. Rest, Leavis & Rest, P.C., Boston, MA, Maureen K. Flaherty, Law Offices of Maureen K. Flaherty, Kingston, MA, for Plaintiff.

Stephen C. Pfaff, Douglas I. Louison, Merrick, Louison & Costello, Boston, MA, for Defendant.

### MEMORANDUM AND ORDER

SARIS, District Judge.

### INTRODUCTION

Plaintiff Michelle Aceto filed suit against defendants David W. Kachajian and Paul Lavoie, both police officers employed by the Town of Barnstable, Massachusetts, bringing claims under 42 U.S.C. § 1983 for unconstitutionally excessive force (Counts I and III) and claims for assault and battery (Counts II and IV). Aceto alleges that on May 23, 2000, defendants injured her while arresting her for a thirteen-year-old traffic violation, by refusing to handcuff her with her arms in front of her body after she informed them that she had an injured shoulder.

Defendants now move for summary judgment on the ground that, as a matter of law, defendants did not use excessive force or commit assault and battery, or in the alternative, that they are entitled to qualified immunity. For the reasons stated below, the Court **DENIES** the motion for summary judgment.

### STANDARD OF REVIEW

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir.1995) (quoting Fed. R.Civ.P. 56(c)). "To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir.1990); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" *Barbour*, 63 F.3d at 37 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Rogers*, 902 F.2d at 143 (quoting *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505) (citations and footnote in *Anderson* omitted).

The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour*, 63 F.3d at 36.

### FACTS

Except where otherwise noted, there is no genuine issue as to any of the following facts:

On May 23, 2000, two Barnstable police officers (not the defendants) arrested Aceto, a small woman, at her residence on an outstanding warrant that had been issued in 1987 by the Framingham District Court. The warrant resulted from the non-payment of a speeding citation thirteen years

earlier. Aceto claims she paid the citation two or three days after receiving the citation. The two officers complied with Aceto's request to be handcuffed with her arms in front of her body after she informed them that she had a separated shoulder due to a hockey injury.

After being processed at the Barnstable Police Station and waiting in a jail cell for approximately forty-five minutes, defendant Kachajian brought Aceto to the booking area and informed her that he was going to handcuff her for transport to the Barnstable District Court. At this point, Aceto told Kachajian that she could not be handcuffed with her arms behind her back because of her separated shoulder. Kachajian returned Aceto to the cell and told her that he needed to check for documentation regarding her injured shoulder.

Kachajian returned approximately four minutes later and told Aceto that her arms were going to be put behind her back whether she liked it or not, because there was no documentation regarding her injured shoulder. Aceto began crying, and told Kachajian that putting her arms behind her back would aggravate an existing injury. She also provided him with the names of her two doctors and her physical therapist.

Kachajian escorted Aceto back to the booking area where defendant Lavoie was present. Aceto explained to Lavoie that she had just finished therapy for a separated shoulder and again provided the names of her two doctors and physical therapist. She did not, however, provide him with the telephone numbers. Lavoie told her that she was not going to tell the officers what to do; she responded that she was not going to let them hurt her. There is nothing in the record indicating that defendants made any effort to verify

Aceto's shoulder injury with her physicians or physical therapist, though this incident occurred during working hours.

Following this exchange, defendants started to handcuff Aceto with her hands behind her back.[1] Lavoie wrenched Aceto's left arm and twisted it around and down, while Kachajian took her right hand and brought it around behind her back. During the handcuffing, something popped, and Aceto felt intense pain in her left arm. When she cried out in pain, Lavoie lowered her left arm to her hip while Kachajian continued handcuffing her. Lavoie then instructed Kachajian to loosen the handcuffs because they were too tight and cutting into her.

They finished handcuffing Aceto with her right hand almost completely over to the left side of her body, because her left arm would not move back. Despite asking for immediate medical attention, she remained in handcuffs for approximately forty-five minutes. Aceto was later diagnosed with having a herniated disc in her neck that resulted from the handcuffing.

Barnstable Police Department policy provides that "[a]ll prisoners shall be handcuffed prior to being placed into the transport vehicle, except when transporting handicapped, injured or sick prisoners, where the use of restraining devices is at the discretion of the transporting officer(s)," and that "[p]risoners will be handcuffed with their hands behind their back, palms facing outward, unless there are extenuating circumstances such as injury."

## LEGAL ANALYSIS

### I. Section 1983 Claims

#### A. Overview of Qualified Immunity

"Qualified immunity protects public officials from section 1983 civil liability so long

---

1. Defendants maintain that they handcuffed Aceto with her arms in front of her body, but for the purpose of summary judgment, they adopt Aceto's allegation that they handcuffed her with her arms behind her back.

as they 'acted reasonably under settled law in the circumstances.'" *Veilleux v. Perschau,* 101 F.3d 1, 2 (1st Cir.1996) (per curiam) (quoting *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)). The doctrine "protect[s] officers from the sometimes 'hazy border between excessive and acceptable force'" and "ensure[s] that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Saucier v. Katz,* 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Priester v. Riviera Beach,* 208 F.3d 919, 926–27 (11th Cir.2000)).

The Supreme Court has set out a two-part test for determining whether an official is entitled to qualified immunity. *See Saucier,* 533 U.S. at 200–09, 121 S.Ct. 2151 (holding that while police officer may have used unconstitutionally excessive force in gratuitously shoving an arrestee, officer was subject to qualified immunity in light of precedent that not every push and shove constitutes excessive force). First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. 2151. If so, the second step requires examining "whether the right was clearly established." *Id.*

## B. Excessive Force

■ The threshold issue is whether a routine behind-the-back handcuffing can constitute excessive force in violation of the Fourth Amendment when a non-threatening, non-flight-risk, cooperative arrestee for a minor crime (like a traffic violation) informs the police that she has an injury to her shoulder, and requests that she be handcuffed with her hands in front.

■ The Fourth Amendment provides the right to be free from excessive force in the course of arrest. *See Graham v. Connor,* 490 U.S. 386, 394–395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "Excessive force claims arising out of arrests are analyzed under the Fourth Amendment's protection against unreasonable seizures and the plaintiff 'must demonstrate that the police defendant's actions were not objectively reasonable, viewed in light of the facts and circumstances confronting him and without regard to his underlying intent or motivation.'" *Bastien v. Goddard,* 279 F.3d 10, 14 (1st Cir.2002) (*quoting Alexis v. McDonald's Rests. of Mass.,* 67 F.3d 341, 352 (1st Cir.1995)). The factors that the court must consider include "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [wa]s actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865.

The Sixth Circuit's decision in *Walton v. City of Southfield,* 995 F.2d 1331 (6th Cir. 1993) is directly on point. In *Walton,* the Sixth Circuit affirmed the district court's denial of summary judgment on a defense of qualified immunity because there were genuine issues of material fact concerning whether plaintiff asked not to be handcuffed with her arms behind her back because of an injured shoulder, during an arrest for a traffic violation. *Id.* at 1341–42. Plaintiff did not have a visible shoulder injury. *See id.* The court held that "[a]n excessive use of force claim could be premised on [the defendant's] handcuffing [plaintiff] if he knew that [plaintiff] had an injured arm and if he believed that she posed no threat to him." *Id.* at 1342. *Accord Guite v. Wright,* 147 F.3d 747, 750 (8th Cir.1998) (permitting excessive force claim where despite visible shoulder injury in sling, officer grabbed plaintiff's wrist, pushed him, and held him against a door); *Eason v. Anoka–Hennepin East Metro*

*Narcotics & Violent Crimes Task Force,* No. 00–CV–311–PAM/SRN, 2002 WL 1303023 at *5 (D.Minn. June 6, 2002) (holding that "arresting officers are required to take an arrestee's preexisting injuries into account when assessing the level of force necessitated in a given situation"); *Caron v. Hester,* No. 00–CV–394–M, 2001 WL 1568761 at *6 (D.N.H. Nov. 13, 2001) (concluding that where an arrestee told defendant officer that he intended to fully cooperate and that he suffered from a pre-existing shoulder injury that prevented him from putting his right arm behind his back, arrestee could press a claim that defendant used excessive force in attempting to handcuff him with his hands behind his back); *Ferguson v. Hall,* 33 F.Supp.2d 608, 612 (E.D.Mich.1999) (denying motion for summary judgment of defendant officer on excessive force claim, where plaintiff alleged that he showed his "deformed" arm to the officer and requested to be handcuffed in front of his body, but the officer ignored his request); *Pritzker v. City of Hudson,* 26 F.Supp.2d 433, 444 (N.D.N.Y.1998) (where the arrestee advised the police officer that "he had previously sustained an injury to both wrists and that handcuffs should not be too tightly placed on his wrists," denying the defense of qualified immunity and pointing out the numerous cases prior to March 1997 holding that handcuffing a non-threatening individual in the face of a known medical condition violates clearly established constitutional rights). *Cf. Howard v. Dickerson,* 34 F.3d 978, 979–81 (10th Cir.1994) (upholding a Fourteenth Amendment claim of deliberate indifference to medical needs, where plaintiff alleged that while being arrested for a traffic offense, she told the arresting officer that "she recently underwent neck surgery [and therefore that] handcuffing her behind her back would cause injury, and if handcuffing was necessary having her hands in front might prevent physical harm," but the officer handcuffed her with her hands behind her back).

Consistent with the weight of authority, the Court holds that Aceto's allegations, if true, would suffice to show defendants used unconstitutionally excessive force in arresting her. Aceto was arrested for failing to pay a thirteen-year-old speeding citation, a minor offense that did not raise concerns of violence or other exigencies. There is no evidence that Aceto posed a flight risk, or a safety risk to the officers or anyone else. While Aceto had no visible signs of injury, she put the police officers on notice about her injured shoulder and provided them with the information to verify it. Aceto was generally cooperative. In short, if the Court assumes Aceto's account to be true, defendants used excessive force when they ignored her request to be handcuffed with her hands in front of her.

## C. Clearly Established Right

Because the factual allegations—if true—show defendants violated a constitutional right, the critical question is whether the constitutional right was clearly established. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. Thus, while it is clearly established that the Fourth Amendment protects against excessive force, this is not enough:

> [T]here is no doubt that *Graham v. Connor* clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet that is not enough. Rather, we emphasized in *Anderson* [*v. Creighton* ] "that the right the official is alleged to have violated must have been 'clearly

established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." 483 U.S. [635,] 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 [ (1987) ]. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) ("[A]s we explained in *Anderson,* the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.").

*Saucier,* 533 U.S. at 201–02, 121 S.Ct. 2151.

The First Circuit has observed that "[o]ne tried and true way of determining whether [a] right was clearly established at the time the defendants acted, is to ask whether existing case law gave the defendants fair warning that their conduct violated the plaintiff's constitutional rights." *Suboh v. District Attorney's Office of the Suffolk District,* 298 F.3d 81, 93 (1st Cir. 2002). "This inquiry encompasses not only Supreme Court precedent, but all available case law." *Id.; see also Hatch v. Dep't for Children, Youth, and Their Families,* 274 F.3d 12, 22–24 (1st Cir.2001) (looking to decisions from outside the First Circuit to determine whether a right was clearly established). Officers "can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2516, 153 L.Ed.2d 666 (2002) (holding that the salient question is whether the state of the law gave defendants "fair warning" that their conduct was unconstitutional).

■ The Court holds that the caselaw existing prior to May 23, 2000 gave defendants fair warning that their conduct violated Aceto's constitutional rights under the Fourth Amendment. The pre-May 23, 2000 caselaw (*e.g., Walton, Guite, Howard, Pritzker, Ferguson* ) clearly established that the police must take known injuries into account in handcuffing a non-threatening individual. Most important is the Sixth Circuit's 1993 published decision in *Walton,* holding that an excessive force claim could be predicated on virtually identical facts. *See* 995 F.2d at 1341–42. While there are various "unpublished" appellate opinions that support the positions of both parties, the Court concludes that unpublished appellate opinions should not vitiate published caselaw that firmly supports a constitutional right.[2] *But see Caron,* 2001 WL 1568761 at *6–*11 (after a thoughtful analysis of the caselaw, including many unpublished cases, finding qualified immunity).

Finally, the Barnstable police department's own handcuffing regulations provided an injury exception, stating that "[p]risoners will be handcuffed with their hands behind their back, palms facing outward, unless there are extenuating circumstances such as injury." Indeed, another pair of officers earlier in the day had handcuffed plaintiff's hands in front of her. While not federal law, the Barnstable handcuffing regulation provided an additional "warning" to defendants to consider arrestees' injuries during handcuffing.

■ In sum, the Court holds that on May 23, 2000, it was clearly established

---

**2.** This case highlights one of the problems generated by the appellate practice of publishing "unpublished cases."

under published caselaw that when a non-threatening, non-flight-risk, cooperating arrestee for a minor crime tells the police she suffers from an injury that would be exacerbated by handcuffing her arms behind her back, the arrestee has a right to be handcuffed with her arms in front of her even if the injury is not visible. If the Court assumes Aceto's account of the facts to be true, any reasonable officers confronting Aceto's situation would have known that handcuffing her arms behind her back was unlawful excessive force.

## II. Assault and Battery Claims

■ Under Massachusetts law, "[t]he critical question in an assault and battery claim against a police officer is whether the officer used intentional and unjustified force upon the person of another." *Rose v. Town of Concord*, 971 F.Supp. 47, 51 (D.Mass.1997) (citing *Powers v. Sturtevant*, 199 Mass. 265, 266, 85 N.E. 84 (1908)). "An 'officer authorized to make an arrest may use such force as is reasonably necessary to effect the arrest,'" *Rose*, 971 F.Supp. at 51 (quoting *Julian v. Randazzo*, 380 Mass. 391, 396 n. 1, 403 N.E.2d 931 (1980)), but may not go "beyond what was reasonably necessary to secure both their own safety and the safety of the general public." *See Rose*, 971 F.Supp. at 51. Aceto's account of her arrest, if true, meets the standards for assault and battery claims.[3]

## ORDER

Defendants' motion for summary judgment (Docket No. 15) is ***DENIED.***

---

**3.** Defendants did not brief whether, under Massachusetts law, qualified immunity barred Aceto's claims for assault and battery. Therefore, the Court does not address this issue.