# United States Court of Appeals
## For the First Circuit

No. 14-1379

BRIAN HUNT AND KIMBERLY HUNT,

Plaintiffs, Appellees,

v.

DAVID MASSI AND JAMES PORTER,

Defendants, Appellants,

and

TOWN OF FALMOUTH,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Chief Judge,
Stahl and Kayatta, Circuit Judges.

Thomas R. Donohue, with whom Leonard H. Kesten, Deidre Brennan Regan, and Brody, Hardoon, Perkins & Kesten, LLP were on brief, for appellants.
Robert S. Sinsheimer, with whom Lauren Thomas and Sinsheimer & Thomas were on brief, for appellee.

December 10, 2014

**LYNCH, <u>Chief Judge</u>**.  This civil rights case arises out of the refusal of officers serving an arrest warrant to accede to the request of an arrestee, Brian Hunt, that he be handcuffed with his hands in front of him, and the ensuing events.

Hunt and his wife brought this case, asserting violations of his federal constitutional rights under 42 U.S.C. § 1983, as well as pendent state law claims.  The district court denied the police officers' claim of qualified immunity on summary judgment based, in part, on the court's erroneous conception of the clearly established law.  <u>Hunt</u> v. <u>Massi</u>, 5 F. Supp. 3d 160, 165-67 (D. Mass. 2014).  The defendants sought interlocutory appellate review.

We have interlocutory appellate jurisdiction over portions of this appeal.  We hold that Hunt had no clearly established right to be cuffed with his hands in front of him and that the officers reasonably understood their actions in effectuating the arrest to be constitutional.  We reverse the district court's denial of summary judgment for the plaintiffs' claim of excessive force under § 1983.  Exercising pendent jurisdiction, we also reach and reverse the district court's denial of summary judgment on the plaintiffs' state law claims of battery and violation of the Massachusetts Civil Rights Act ("MCRA").  We lack appellate jurisdiction over the plaintiffs' malicious prosecution claims, and remand those claims, both state and federal.

## I.  Factual Background

On June 2, 2011, the New Bedford District Court issued an arrest warrant for Hunt based on information that he had an unpaid fine for a traffic violation.  Hunt, 5 F. Supp. 3d at 162.  It was later discovered that Hunt had paid the fine, but that the Town of New Bedford had mistakenly failed to record the payment.  Id.

Four police officers, including defendant officers David Massi and James Porter, arrived at the plaintiffs'[1] home to serve the warrant at approximately 6:25 a.m., the morning of June 6, 2011.  See id. at 163.  The officers were aware that Hunt had been arrested approximately two months earlier for his involvement "in a major cocaine and heroin distribution ring in Cape Cod."  See id. at 162 n.1.  Officers Massi and Porter knocked on the front door, while the two other officers watched the rear of the house.

Hunt's wife, who answered the front door, led Officers Porter and Massi to the bedroom where Hunt was sitting on the bed. When informed that he was under arrest, Hunt requested that he be handcuffed with his hands in front of him.  Id. at 163.  Hunt explained that he had undergone surgery on his stomach the week before, and claimed that he could not be handcuffed with his hands behind him.  Id.  Officer Massi asked Hunt to lift his shirt, and then looked at his stomach.  We take as true Hunt's testimony that

---

[1]  We refer to Mr. Hunt as "Hunt," and Mr. and Mrs. Hunt as "plaintiffs."

the officers would have seen a "big, long, red mark." The officers said they saw nothing which dissuaded them from the usual practice of handcuffing behind the back. They believed that "no injury could result" from doing so. Id. In response to the plaintiffs' continued requests that Hunt be handcuffed with his hands in front of him, Officer Massi stated: "We can't do it that way. That's not possible."

The district court inferred there was no resistance to arrest, because, "[a]ccording to Mr. Hunt's testimony, he did not try to defend or protect himself because he was too weak due to the surgery."[2] Id. But, Hunt's opposition to summary judgment is clear that he resisted when his request was denied and he was told to put his arms behind him. In this appeal too, the plaintiffs specify that Hunt did not resist "until he was told his arms needed to be placed behind him."

---

[2] On an interlocutory appeal of a district court's denial of qualified immunity, we generally "accept as given the facts that the district court ruled could be found by a reasonable jury viewing the evidence in the light most favorable to the plaintiff." Snyder v. Gaudet, 756 F.3d 30, 32 (1st Cir. 2014). However, "'we need not accept [the plaintiff's] version of events if it is blatantly contradicted by the evidence.'" Penn v. Escorsio, 764 F.3d 102, 105 n.2 (1st Cir. 2014) (quoting Medina-Rivera v. MVM, Inc., 713 F.3d 132, 136 (1st Cir. 2013)) (internal quotation marks omitted); see also Scott v. Harris, 550 U.S. 372, 378-81 (2007) (refusing to adopt the plaintiff's version of facts when it was "clearly contradict[ed]" by the videotape of the events). In this case, Hunt's testimony that he was too weak to resist is "blatantly contradicted" by his own concessions and the record evidence.

Events then moved very quickly. Hunt's wife testified that Hunt got off the bed with his hands in front of him. According to the plaintiffs, the officers pushed Hunt onto the bed and then onto the floor. Hunt testified at his subsequent state criminal trial on charges for resisting arrest and his purported assault and battery on an officer during the June 6 events. He admitted that his demeanor changed from being calm when he made his request to being angry after he was brought to the floor. His wife agreed that he was "extremely upset." A video made by the plaintiffs' son of a portion of the events showed the officers and Hunt struggling on the floor for fifteen to twenty seconds while the officers tried to handcuff Hunt. The officers kneed Hunt in the leg and the back during this scuffle. At oral argument, the plaintiffs' counsel conceded that the officers kneed Hunt in the course of securing the handcuffs. The defendants estimate, and the plaintiffs do not contest, that it took them "maybe fifteen seconds or so" to successfully handcuff Hunt after he refused to be handcuffed with his hands behind his back. After being handcuffed, Hunt was taken to the police station.

Due to Hunt's complaints about pain, he was driven by ambulance from the police station to the Falmouth Hospital, where he remained for approximately ten hours. Id. The emergency room report states that nothing could have been damaged during the altercation because Hunt's recent surgery was a laparoscopic lysis

-5-

of adhesions.  Id.  He was released from the hospital on his own recognizance.  Id.

The police officers subsequently charged Hunt with resisting arrest and with assault and battery on a police officer. Id.  Both a clerk magistrate and the District Attorney's office found probable cause for the charges to go forward.  On September 25, 2012, after a two-day trial, Hunt was found not guilty.  See id.

Hunt alleges that he suffered from knee and back pain after the arrest, embarrassment after the local newspaper coverage of the arrest, and emotional distress whenever he now sees Officers Massi or Porter.  Id.  It is undisputed that Hunt suffered no physical injury as a result of the handcuffing other than whatever temporary pain he experienced incident to the arrest.

## II.  Procedural Background

The plaintiffs brought this lawsuit against Officer Massi, Officer Porter, and the Town of Falmouth on March 21, 2013 for violations of 42 U.S.C. § 1983, with additional state law claims.  We address only those claims that survived summary judgment despite the defense of qualified immunity.[3]  Under § 1983,

---

[3]  On January 22, 2014, the district court granted the defendants' motion for summary judgment for the following claims: (1) a Monell claim against the Town of Falmouth under § 1983; (2) negligence/vicarious liability against the Town of Falmouth; (3) conspiracy against the individual officers and the Town of Falmouth under § 1983; (4) violation of the MCRA against the Town of Falmouth only; (5) false imprisonment against the individual

the plaintiffs brought claims against the individual officers for excessive force and malicious prosecution. In addition, the plaintiffs brought state law claims for battery, malicious prosecution, and violation of the MCRA.

Focusing on the claim that the officers had used excessive force, the district court denied the officers' motion for summary judgment after concluding that they were not entitled to qualified immunity. Hunt, 5 F. Supp. 3d at 167. Finding that the "MCRA claims are subject to the same standard of immunity for police officers that is used for claims asserted under section 1983," the district court denied summary judgment on the plaintiffs' MCRA claim for the same reasons as the plaintiffs' excessive force claim. Id. at 169. Having determined that the officers "potentially used excessive force when arresting [Hunt]" such that qualified immunity did not apply, the district court reasoned that it must deny summary judgment on the plaintiffs' claim for battery as well. Id. at 167. Finally, the district court noted that "there are disputed issues of material fact as to whether the police officers had probable cause to initiate prosecution against Mr. Hunt for resisting arrest, thus precluding summary judgment" for the plaintiffs' malicious prosecution claims

---

officers and the Town of Falmouth; and (6) intentional infliction of emotional distress against the individual officers.

as to the charges brought by the police officers after the altercation. Id. at 168.

This appeal followed. The defendants argue that the district court erred in denying their motion for summary judgment on Hunt's excessive force claim since their use of force was reasonable, and they did not violate any clearly established constitutional right. They say they are entitled to qualified immunity. The defendants argue that if we reverse the district court's decision on the plaintiffs' claim for excessive force, then the dismissal of the plaintiffs' claims for battery, violation of the MCRA, and malicious prosecution must follow suit.

We conclude that the district court erred in denying qualified immunity to the defendants for the plaintiffs' claim of excessive force. When defined at the appropriate level of specificity, the necessary question is whether Hunt had a clearly established right to have his hands cuffed in front of him due to an alleged injury despite the officers' judgment call to the contrary. There is no such clearly established right. Instead, First Circuit precedent makes clear that the officers' decision to handcuff an arrestee according to standard police practice is a judgment call that must be analyzed based on the totality of the circumstances. Based on the facts here, no reasonable officer would have believed that his or her decision to handcuff Hunt according to standard police practice violated the constitutional

prohibition on excessive force.  We agree with the defendants that reversal of the plaintiffs' state law claims for battery and violation of the MCRA necessarily follows this conclusion, but we find we lack jurisdiction over the denial of immunity on the malicious prosecution claim.

### III. Federal Claims

A.      Appellate Jurisdiction

"Ordinarily, we hear appeals only from final orders and decisions."  Cady v. Walsh, 753 F.3d 348, 358 (1st Cir. 2014) (citing 28 U.S.C. § 1291).  "An order denying a motion for summary judgment is generally not a final decision within the meaning of § 1291 and is thus generally not immediately appealable."  Plumhoff v. Rickard, 134 S. Ct. 2012, 2018 (2014).  Under the collateral order doctrine, however, a district court's pre-trial denial of qualified immunity is immediately appealable to the extent that it turns on legal, rather than factual, grounds.  See id. at 2018-19; Penn v. Escorsio, 764 F.3d 102, 109-10 (1st Cir. 2014).  We review the district court's legal conclusions, based on the undisputed and uncontradicted facts, de novo.  See Snyder v. Gaudet, 756 F.3d 30, 33 (1st Cir. 2014).

B.      Excessive Force

As the Supreme Court recently reiterated, "[a] government official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was

clearly established at the time of the challenged conduct."
Carroll v. Carman, 135 S. Ct. 348, 350 (2014) (per curiam). "This doctrine 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" Id. (quoting Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011)) (internal quotation marks omitted).

A familiar two-step inquiry determines whether the defendants are entitled to qualified immunity:

> First, we inquire whether the facts, taken most favorably to the party opposing summary judgment, make out a constitutional violation. Second, we inquire whether the violated right was clearly established at the time that the offending conduct occurred. The second, "clearly established," step itself encompasses two questions: whether the contours of the right, in general, were sufficiently clear, and whether, under the specific facts of the case, a reasonable defendant would have understood that he was violating the right.

Ford v. Bender, 768 F.3d 15, 23 (1st Cir. 2014) (internal citations omitted); see also Rocket Learning, Inc. v. Rivera-Sánchez, 715 F.3d 1, 9 (1st Cir. 2013). It is in our discretion not to engage in the first inquiry, but to go directly to the second, as we do here. See Pearson v. Callahan, 555 U.S. 223, 236 (2009); Lopera v. Town of Coventry, 640 F.3d 388, 396 (1st Cir. 2011).

We start by defining the right at issue at "an appropriate level of generality." Brady v. Dill, 187 F.3d 104, 115 (1st Cir. 1999). Citing Graham v. Connor, 490 U.S. 386 (1989), the

-10-

plaintiffs argue that "[t]here is little doubt that police must refrain from use of excessive force." This "casts too broad a net." See Suboh v. Dist. Attorney's Office of the Suffolk Dist., 298 F.3d 81, 93 (1st Cir. 2002). The Supreme Court agreed that "there is no doubt that Graham . . . clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009). "Yet," the Supreme Court explicitly held, "that is not enough" to defeat qualified immunity. Id. at 202.

The clearly established inquiry must be undertaken "'in a more particularized, and hence more relevant, sense.'" Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). We must analyze whether the law is clearly established "'in light of the specific context of the case, not as a broad general proposition.'" Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (quoting Saucier, 533 U.S. at 201); see also al-Kidd, 131 S. Ct. at 2084 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."). In this case, the relevant question is not whether the Fourth Amendment generally prohibited excessive force. The relevant question is whether, in 2011, Hunt had a clearly established right to be handcuffed with his hands in front of him when it would not be obvious to a reasonable officer

-11-

that Hunt's abdominal scar would prevent him from putting his hands behind his back. The ensuing events, in which Hunt does not claim to have cooperated, occurred in the course of the handcuffing with his hands behind his back.[4]

To be clearly established, the contours of this right must have been "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Plumhoff, 134 S. Ct. at 2023. "In other words, 'existing precedent must have placed the . . . constitutional question beyond debate.'" Carroll, 135 S. Ct. at 350 (quoting al-Kidd, 131 S. Ct. at 2083).

The district court undertook this analysis at the appropriate level of specificity, but erred in its conclusion that Hunt had a clearly established right to be handcuffed with his hands in front of him due to an alleged injury, "even if the injury is not visible." See Hunt, 5 F. Supp. 3d at 166. The district court relied on four cases to reach this conclusion. Id. Two are easily distinguishable from the present case since they involved much more serious, and visible, injuries that would have been

---

[4]     To the extent that the plaintiffs attempt to separate the officers' decision to handcuff Hunt from their use of knee strikes in order to do so, the plaintiffs have provided no case law clearly establishing that the latter was unconstitutional. See, e.g., Goodrich v. Everett, 193 F. App'x 551, 556 (6th Cir. 2006) (finding no excessive force when "the kneeing and kicking occurred not when [the arrestee] was neutralized, but while the officers were handcuffing him").

exacerbated by the standard police procedure for handcuffing.[5] The other two district court opinions, which both acknowledge a debate on the issue, are simply insufficient to show that the law was clearly established for immunity purposes.

The first, Caron v. Hester, No. Civ. 00-394-M, 2001 WL 1568761 (D.N.H. Nov. 13, 2001), actually supports a grant of immunity for the defendants in this case. There, the district court found it "unlikely" that a constitutional violation occurred when an officer handcuffed an allegedly injured arrestee with his hands behind his back, but found a material factual dispute on the issue. Id. at *6, *11. Nevertheless, the district court held that the officer was entitled to qualified immunity since no precedent clearly established the plaintiff's right "not to be handcuffed behind his back after he allegedly informed [the officer] of his shoulder injury." Id. at *8, *10. Although the First Circuit had not yet addressed the issue, "several other courts . . . [had] concluded, at a minimum, that a suspect who displays no visible signs of being unusually vulnerable or fragile, is not subjected to excessive force when a police officer uses customary, reasonable

_____

[5] In Howard v. Dickerson, 34 F.3d 978 (10th Cir. 1994), the plaintiff told the officers that she had recently undergone neck surgery, as evidenced by the neck brace she was wearing. Id. at 979. In Eason v. Anoka-Hennepin E. Metro Narcotics & Violent Crimes Task Force, No. Civ. 00-311 PAM/SRN, 2002 WL 1303023 (D. Minn. June 6, 2002), the plaintiff, who offered no resistance, had his sternum "wired together" after a recent heart surgery and the officers had difficulty moving his arms behind his back. Id. at *6.

force in applying handcuffs or otherwise effecting an arrest." <u>Id.</u> at *9.[6]

In the second, <u>Aceto</u> v. <u>Kachajian</u>, 240 F. Supp. 2d 121 (D. Mass. 2003), the district court held that police officers may have used constitutionally excessive force, and were not entitled to qualified immunity, when they handcuffed "a non-threatening, non-flight-risk, cooperative arrestee for a minor crime" with her hands behind her back despite her alleged shoulder injury. <u>Id.</u> at 124-27. The district court in <u>Aceto</u> stressed that the plaintiff was arrested for "failing to pay a thirteen-year-old speeding citation, a minor offense that did not raise concerns of violence or other exigencies;" that there was "no evidence that Aceto posed a flight risk, or a safety risk to the officers or anyone else;" that Aceto was "generally cooperative;" and that Aceto put the

---

[6] The court in <u>Caron</u> explained as a policy matter that,

> courts do not want to vest suspects with casual veto power over efforts to handcuff them simply by claiming to have a bad wrist, arm, shoulder, back, etc. To require police officers to universally credit such unsupported claims, or embark upon an investigation into those claims, would needlessly interfere with their duties and, perhaps, expose them and members of the public to unnecessary risk in rapidly evolving situations.

2001 WL 1568761, at *10. Likewise, the Eleventh Circuit has noted that "a police officer need not credit everything a suspect tells him. This idea is especially true when the officer is in the process of handcuffing a suspect." <u>Rodriguez</u> v. <u>Farrell</u>, 294 F.3d 1276, 1278 (11th Cir. 2002) (internal citation omitted).

officers on notice of her shoulder injury even if it was not otherwise visible. Id. at 125. The district court in Aceto was of the view that the published case law clearly established the plaintiff's "right to be handcuffed with her arms in front of her even if the injury is not visible," but acknowledged that "various 'unpublished' appellate opinions . . . support[ed] the positions of both parties." Id. at 126-27.

As noted by both of these cases, other circuits have reached different holdings on the constitutionality of handcuffing an allegedly injured arrestee behind his or her back. In Walton v. City of Southfield, 995 F.2d 1331 (6th Cir. 1993), superseded by statute on other grounds as recognized in Livermore ex rel Rohm v. Lubelan, 476 F.3d 397 (6th Cir. 2007), for example, an arrestee for driving with a suspended license told the officer that she had a sore shoulder and asked not to be handcuffed with her hands behind her. Id. at 1333-34. The Sixth Circuit held that "[a]n excessive use of force claim could be premised on [the officer's] handcuffing [the plaintiff] if he knew that she had an injured arm and if he believed that she posed no threat to him." Id. at 1342; see also Crooks v. Hamilton Cnty., Ohio, 458 F. App'x 548, 550 (6th Cir. 2012) (holding same when the defendant handcuffed a 65-year-old arthritic woman for a non-violent crime with her hands behind her back despite "persistent claims of pain," which caused the woman to suffer a broken rib).

-15-

The opposite result was reached in <u>Wells</u> v. <u>Okla. ex rel. Dep't of Pub. Safety</u>, 97 F.3d 1465, 1996 WL 557722 (10th Cir. Sept. 30, 1996) (unpublished table decision), when a "cooperative and non-threatening" arrestee for a misdemeanor told the police that "[his arm] was full of plates and screws," and he could not put it behind his back. <u>Id.</u> at *1, *3. The Tenth Circuit found no constitutional violation for "putting handcuffs on a potentially fragile arrestee without use of abnormal force." <u>Id.</u> at *3; <u>see also</u> <u>Morreale</u> v. <u>City of Cripple Creek</u>, 113 F.3d 1246, 1997 WL 290976, at *5-6 (10th Cir. May 27, 1997) (unpublished table decision) (finding no constitutional violation when officers handcuffed a non-threatening and cooperative arrestee with her hands behind her back despite her stated shoulder injury).

In this circuit, the controlling case is <u>Calvi</u> v. <u>Knox County</u>, 470 F.3d 422 (1st Cir. 2006), in which we found no constitutional violation when officers handcuffed an allegedly injured arrestee according to standard police practice. <u>Id.</u> at 428. There, police officers responded to a report of a woman, Calvi, brandishing a knife in a residence. <u>Id.</u> at 425. Calvi's landlord advised the police officers that Calvi had recently undergone elbow surgery and asked them to be gentle. <u>Id.</u> The police officer "did not observe any debilitating condition," <u>id.</u>, and handcuffed Calvi according to the "[s]tandard police practice" with her hands behind her back, <u>id.</u> at 428. We held that "[the

officer's] decision not to deviate from this practice was a judgment call, pure and simple." Id. "The totality of the circumstances afford[ed] no legally sufficient basis for a finding that [the officer's] handcuffing of Calvi represented a constitutionally proscribed use of excessive force." Id. (citing Jackson v. City of Bremerton, 268 F.3d 646, 653 (9th Cir. 2001)).

The plaintiffs point to no post-Calvi case that would have put the officers on notice that their decision to handcuff Hunt with his hands behind his back was not a "judgment call," but clearly violated the Constitution. Nor could they. Like the Second Circuit, "[w]e are aware of no case . . . where a court held that ignoring an uncooperative suspect's claim of invisible injury (such that handcuffing could be harmful) made during the course of handcuffing constituted excessive force." Beckles v. City of N.Y., 492 F. App'x 181, 183 (2d Cir. 2012).

On the facts of this case, a reasonable officer would not have understood his or her decision to handcuff Hunt with his arms behind his back to constitute excessive force. The officers knew of Hunt's serious and recent criminal history, and they encountered some admitted resistance. They had also looked at the site of his recent surgery and determined that no new injury or exacerbation would result from the standard technique for handcuffing. Nor was this determination unreasonable since Hunt's scar was on his stomach. Most of the cases finding excessive force incident to

-17-

handcuffing involve injuries to the shoulder or arm.  See, e.g., Aceto, 240 F. Supp. 2d at 124-25.  After Calvi, a reasonable officer would not have understood this judgment call to be a violation of the Constitution.  For these reasons, the defendants are entitled to qualified immunity on the plaintiffs' excessive force claim.

C.        Malicious Prosecution

In contrast with the excessive force claim, we do not have appellate jurisdiction over the federal malicious prosecution claim.  The plaintiffs brought the federal malicious prosecution claim against the defendants under § 1983 based on Hunt's subsequent prosecution on charges that he had both resisted arrest and that he had committed assault and battery on a police officer during his arrest on June 6.[7]  The defendants argued that probable cause had existed to pursue the state charges against Hunt, and so they were entitled to qualified immunity.

The district court's denial of immunity rested on its finding that there were "disputed issues of material fact as to whether the police officers had probable cause to initiate

---

[7]    The district court correctly differentiated between the plaintiffs' malicious prosecution claims based on Hunt's June 6, 2011, arrest, and his subsequent prosecution on charges that Hunt had both assaulted an officer and resisted arrest on June 6.  Hunt, 5 F. Supp. 3d at 167.  The district court granted the defendants' motion for summary judgment on the plaintiffs' malicious prosecution claims to the extent that they relied on the former, and the plaintiffs do not appeal this decision.  Id. at 168.

-18-

prosecution against Mr. Hunt for resisting arrest." Hunt, 5 F. Supp. 3d at 168. The court said nothing about the assault and battery charge and did no further analysis. See id. We take it that the court implicitly found that there was a dispute over the assault and battery charge. After all, at deposition, Hunt denied striking the officers, and he has not made different statements in his pleadings or on appeal.

The defendants' argument ignores the fact that the state charges they brought accused Hunt of committing assault and battery on an officer, and in so doing, went well beyond charging him merely with resisting arrest. They do not explain how there is appellate jurisdiction over the clear dispute of fact over Hunt's claim that he was maliciously prosecuted for assault and battery, and that there was no probable cause for those charges. This dispute exists regardless of whether there was probable cause for the resisting arrest portion of the state charges.

Whether or not we might have had appellate jurisdiction had the prosecution been only for resisting arrest given our earlier conclusions, we choose not to divide the malicious prosecution claim. We have no pure issue of law; rather, there is a material dispute of fact. The defendants wisely have not argued that a reasonable officer would think that he could charge an arrestee with assault and battery on the officer when the arrestee did not strike the officer in the course of the arrestees' refusal

to cooperate.  We lack jurisdiction on interlocutory appeal to review purely factual disputes of evidentiary sufficiency.  See Penn, 764 F.3d at 110.

### IV.  Remaining State Law Claims

"Generally, interlocutory review of a decision denying qualified immunity under § 1983 'does not in and of itself confer jurisdiction over other contested issues in the case.'"  Suboh, 298 F.3d at 97 (quoting Roque-Rodriguez v. Lema Moya, 926 F.2d 103, 105 & n.2 (1st Cir. 1991)).  We may nevertheless exercise pendent appellate jurisdiction over the plaintiffs' remaining claims if the party seeking jurisdiction shows "that the issues are 'inextricably intertwined with [the district] court's decision to deny the individual defendants' qualified immunity motions, or that review of the [decision for which pendent jurisdiction is sought] was necessary to ensure meaningful review of the [qualified immunity decision].'"  Id. (quoting Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 51 (1995)) (alterations in original).  This test is satisfied here for two of the plaintiffs' state law claims.

The plaintiffs' MCRA claim is subject to the same standard of qualified immunity for police officers that applies for § 1983 claims.  Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir. 2010) (citing Duarte v. Healy, 537 N.E.2d 1230, 1232 (Mass. 1989)).  "Because the police officers [were] not protected by qualified immunity with respect to the section 1983 excessive force claim,"

the district court held that they were also not protected by qualified immunity with respect to the MCRA excessive force claim. Hunt, 5 F. Supp. 3d at 169. The district court's own logic makes the claims "inextricably intertwined," and we reverse the denial of summary judgment on the MCRA claim.

The determination of the reasonableness of the force used under § 1983 also "controls [the] determination of the reasonableness of the force used under the common law assault and battery claims." Raiche, 623 F.3d at 40. The court denied the officers' motion for summary judgment on the plaintiffs' battery claim specifically because it had denied the officers' motion for qualified immunity under § 1983. Hunt, 5 F. Supp. 3d at 167. In light of our conclusion that a reasonable officer would have understood that the defendants were justified in handcuffing Hunt with his hands behind his back, we conclude that the defendants cannot be liable for the "intentional and unjustified use of force upon the person of another," as required for the plaintiffs' claim of intentional battery, Commonwealth v. Porro, 939 N.E.2d 1157, 1162 (Mass. 2010) (citation omitted) (internal quotation marks omitted), and reverse the denial of summary judgment on this claim as well.

Finally, having remanded the federal claim of malicious prosecution, we remand the state law claim of malicious prosecution.

## V. Conclusion

We reverse and remand for entry of summary judgment for the defendants on the plaintiffs' claims of excessive force, battery, and violation of the MCRA. We lack jurisdiction over the plaintiffs' claims of malicious prosecution, and remand these claims for proceedings consistent with this decision.

So ordered.