# United States Court of Appeals
## For the First Circuit

No. 14-1513

BRIAN FERNÁNDEZ-SALICRUP, individually and in
representation of his minor children; MARÍA RAMOS-SANTIAGO,
individually and in representation of her minor children;
V.F.-R., minor; J.F.-R., minor; CONJUGAL PARTNERSHIP
FERNÁNDEZ-RAMOS,

Plaintiffs, Appellants,

v.

JOSÉ FIGUEROA-SANCHA, Superintendent of the Police Department;
JOSÉ L. CALDERO-LÓPEZ, Colonel, Director of the Carolina
Police Region; JOSÉ LUIS DÍAZ-PORTALATÍN, Captain;
GINNETTE ROSADO, Police Officer,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

---

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

---

Eduardo Vera Ramírez, with whom Landrón Vera, LLC, Eileen
Landrón Guardiola, and Luis Rodríguez Muñoz, were on brief, for
appellants.
Susana I. Peñagarícano-Brown, Assistant Solicitor General,
with whom Margarita L. Mercado-Echegaray, Solicitor General, and
Zarel Soto-Acabá, Assistant Solicitor General, were on brief, for
appellees Figueroa-Sancha, Caldero-López, Díaz-Portalatín, and
Rosado.
Zarel Soto-Acabá, Assistant Solicitor General, with whom
Margarita L. Mercado-Echegaray, Solicitor General, and Susana I.
Peñagarícano-Brown, Assistant Solicitor General, were on brief, for
appellee Figueroa-Sancha.

June 25, 2015

**TORRUELLA, Circuit Judge**. On October 8, 2010, Plaintiffs Brian Fernández-Salicrup, María Ramos-Santiago, and the Conjugal Partnership formed between them -- on their own behalf and on behalf of their minor children Valerie Fernández-Ramos ("Fernández") and Jesús Fernández-Ramos -- filed suit against Puerto Rico Police Department ("PRPD") Superintendent José Figueroa-Sancha ("Figueroa"), PRPD Carolina Regional Director José Caldero-López ("Caldero"), PRPD Canóvanas District Commander Luis Díaz-Portalatín ("Díaz") (collectively, the "Supervisory Defendants"), and PRPD officer Jeanette Rosado (together with the Supervisory Defendants, the "Defendants"). Plaintiffs alleged, under 42 U.S.C. § 1983 and analogous provisions of the Puerto Rico Civil Code's torts statute, that Fernández's Fourth, Fifth, Ninth, and Fourteenth Amendment rights were violated when she was unconstitutionally arrested and subjected to excessive force during an incident at the Luis Hernaiz-Veronne High School (the "School"). Following discovery, the district court struck Plaintiffs' expert report and granted summary judgment in favor of the Supervisory Defendants; shortly thereafter, it dismissed with prejudice the claims against Rosado as well. Plaintiffs now appeal. For the reasons that follow, we affirm the exclusion of the expert report, the grant of summary judgment in favor of the Supervisory Defendants, and the dismissal with prejudice of Plaintiffs' Fourth Amendment excessive force claim against Rosado. As to Plaintiffs'

Fourth Amendment unconstitutional arrest claim against Rosado, however, we reverse the dismissal and remand for trial.

## I. Background

**A. Factual Background[1]**

On October 9, 2009, then-Puerto Rico Governor Luis Fortuño attended an event at the Jesús T. Piñero Public Housing Project, located across the street from the School. A number of students at the School objected to Fortuño's presence, so, as a form of protest, they threw objects such as eggs, rocks, and tree branches at the PRPD officers guarding the event and at cars passing through the street. In response, Díaz, the commanding officer at the scene, instructed a number of police officers -- including Rosado -- to enter the School in order to quiet the situation and arrest those responsible for throwing objects.

Once the officers entered the School's premises, however, the situation turned chaotic. The students, whether they were throwing objects or not, all ran towards the School building. One of those students was Fernández. Though Fernández never threw anything, she ran away from the PRPD, entered a hallway, closed the gate behind her, and remained nearby. PRPD officers, including

---

[1] We recite the facts in the light most favorable to Plaintiffs, the party opposing summary judgment, and draw all inferences in their favor. See, e.g., Perry v. Roy, 782 F.3d 73, 77 (1st Cir. 2015).

Rosado, soon arrived at the gate and ordered Fernández to open it;
she immediately complied.

Upon opening the gate, Rosado spoke to Fernández "in a
rough manner" and pushed her aside. Fernández, not happy with how
she was being spoken to, told Rosado not to speak to her like that,
to which Rosado answered that she could speak to Fernández however
she liked. Fernández once again expressed her displeasure with
Rosado's tone, at which point Rosado "shoved" Fernández face-first
against a wall and placed a handcuff on her left wrist.[2] But
before Rosado could finish handcuffing her, Fernández slipped
through the gate in an attempt to escape. As this was occurring,
a number of students grabbed Fernández's right arm and tried to
help her by pulling her away from Rosado. This led to a small tug-
of-war between Rosado and the students, hurting Fernández in the
process. Ultimately, this escape attempt failed, and Fernández was
escorted to the School Director's office.

Fernández was later transported to a nearby police
station, and then to the Carolina police headquarters where she was
given a citation to appear in court. She, along with nine other

---

[2] Rosado, meanwhile, tells a different story preceding the arrest.
According to Rosado, once Fernández opened the gate and Rosado
walked by it, Fernández grabbed Rosado's firearm and attempted to
pull it from the holster. Rosado also testified that Fernández
informed Rosado that Rosado "could not go in" to the School.
Though we have described and adopted the facts in the light most
favorable to Plaintiffs, we note this discrepancy here due to its
relevance in the discussion below.

students, was charged with violating Article 208 (causing aggravated damages), Article 251 (causing violence against the public authority), and Article 258 (rioting) of the Puerto Rico Penal Code. The charges were eventually dismissed.

## B. Procedural Background

Plaintiffs filed suit in the district court on October 8, 2010. Following the onset of discovery, a protracted dispute arose regarding documents in the possession of the PRPD. Because the intricacies of this dispute are relevant to Plaintiffs' claim that the district court erred in excluding their expert's report, we describe the chronology of this dispute in some detail.

- **March 29, 2011**. Plaintiffs filed a motion to compel documents from non-parties the Internal Investigation Bureau and the Human Resources Office of the PRPD (collectively, the "Non-Parties"). These documents, Plaintiffs claimed, contained critical information to aid their expert witness, Dr. William Gaut, in refuting Rosado's allegation that Fernández had reached for Rosado's weapon. Defendants moved to quash the requests the same day, alleging that Defendants had never received a copy of the subpoena served on the Non-Parties and that in any event the requested personnel files were confidential. On April 5, 2011, the district court issued a show cause order requiring the Non-Parties to explain why the motion to compel should not be granted. On April 22, 2011, the Non-Parties responded, explaining that the documents were confidential, that the request was overly costly and burdensome, and that Plaintiffs refused to examine the files in order to identify the relevant documents to be produced. The district court chose not to immediately resolve the issue, opting instead to leave the motions pending.

- **April 20, 2011**. Plaintiffs filed a new motion to compel, this time seeking initial disclosures from Defendants. This motion was denied without prejudice on April 23, 2011, because Plaintiffs failed to show that the parties complied with the court's meet and confer requirements.

- **April 25, 2011**. Plaintiffs re-filed their April 20 motion to compel initial disclosures. This motion provided proof of compliance with the court's meet and confer requirements. The district court chose not to immediately resolve the issue, opting instead to leave the motion pending.

- **June 23, 2011**. Plaintiffs filed a request for a court order seeking the release of confidential personnel files held by the PRPD. This motion was in response to an April 25, 2011, informative motion by the Non-Parties in which the Non-Parties confirmed their belief that the personnel files being sought by Plaintiffs were confidential and thus could not be released absent a court order. The district court chose not to immediately resolve the issue, opting instead to leave the motion pending.

- **August 8, 2011**. The district court entered a case management order setting August 30, 2011, as the deadline to serve initial disclosures and December 31, 2011, as the deadline for all discovery. In light of this order, it denied as moot Plaintiffs' April 25, 2011, motion to compel initial disclosures.

- **October 24, 2011**. Plaintiffs served non-party PRPD with a subpoena to produce documents, information, or objects, or to permit the inspection of premises by November 8, 2011. Both PRPD and Defendants filed motions to quash on November 7, 2011, alleging a lack of proper notice to Defendants and a failure to give PRPD a reasonable time to comply. On November 14, 2011, Plaintiffs filed a motion to compel and for sanctions, arguing that the motions to quash were not justified and that sanctions were in order since the PRPD did not comply with the subpoena by November 8. The motions were referred to a

magistrate judge on November 17. The following day, the magistrate judge denied the motions to quash and granted in part and denied in part Plaintiffs' motion. The judge ordered PRPD to produce the documents, information, or objects requested by Plaintiffs by December 2 (later extended until December 16 and then to December 27), but the judge declined to impose sanctions for failure to comply with the subpoena.

- **December 1, 2011**. The parties attended a status conference with the magistrate judge. At the conference, Plaintiffs complained that while they had retained a police procedure/practice expert, the expert could not complete his report until he received the documents sought in Plaintiffs' motions to compel. Defendants responded that many of the requested documents had already been produced, that some did not exist, and that others -- such as videos and photographs -- were being located and would be produced. The parties indicated that they would be meeting on December 9 to discuss the PRPD's production in an effort to narrow the remaining issues.

- **December 7, 2011**. The parties jointly moved for an extension of the discovery deadline to March 31. The district court granted the extension on December 22, 2011, but noted that "[n]o further extensions will be granted" and that the "[f]ailure to abide by the present deadlines will result in preclusion."

- **December 8, 2011**. The district court ordered Plaintiffs to inform the court within one week whether their pending March 29, April 25, and June 23 discovery motions were still outstanding and in need of resolution. Plaintiffs failed to respond, so on December 23, 2011, the district court issued an order requiring Plaintiffs to show cause as to why it should not deny all three motions as a sanction for Plaintiffs' failure to reply. This spurred Plaintiffs into action, and they responded the same day. According to Plaintiffs, "the parties [were] attempting to solve these issues amicably," noting that some of the documents had been produced and that the parties were scheduling a meeting for early

-8-

January regarding the remaining production. Plaintiffs anticipated they would be better able to answer the district court's inquiry following this meeting, and thus asked the district court to hold the motions in abeyance until then. On January 4, 2012, the district court rejected this proposal, ruling that "[s]ince the discovery issues raised [in the Order to Show Cause] were in essence discussed with Magistrate Judge Vélez, the discovery motions pending . . . are hereby Denied Without Prejudice."

- **March 19, 2012**. Defendants and non-party PRPD each filed a motion to quash a March 5 subpoena seeking the disciplinary and/or administrative files of twenty-eight police officers. With the exception of the files of co-defendants Díaz and Rosado, which were produced, the motions alleged that the other twenty-six files were not relevant and could not reasonably lead to the discovery of admissible evidence. PRPD also argued that the subpoena failed to allow a reasonable time for PRPD to comply. In response, on March 27, Plaintiffs once again filed a motion to compel and for sanctions. The district court chose not to immediately address the motion, opting instead to leave it pending.

- **March 30, 2012**. The parties filed a joint motion for a one-month extension of the discovery deadline. The district court chose not to immediately address the motion, opting instead to leave it pending.

- **April 24, 2012**. A status conference was held before the magistrate judge. During the conference, the magistrate judge noted that the March 19 motions involving the March 5 subpoena were still pending, as was the joint motion for an extension of the discovery deadline. It also commented that Plaintiffs had yet to produce Dr. Gaut's expert report.

- **April 30, 2012**. Defendants filed their motion for summary judgment along with a corresponding statement of uncontested material facts.

- **May 10, 2012**.  The district court denied as moot the parties joint motion for an extension of the discovery deadline until April 30, 2012.

- **May 11, 2012**.  The district court granted the March 19, 2012, motions to quash the March 5 subpoena and denied Plaintiffs' March 27, 2012, motion to compel and for sanctions.

- **May 21, 2012**.  Plaintiffs disclosed Dr. Gaut's expert report.

- **June 4, 2012**.  Plaintiffs filed their opposition to summary judgment, their additional uncontested facts, and opposition to Defendants' statement of uncontested facts.  As part of their opposition and alternative recitation of the facts, Plaintiffs relied on the expert report of Dr. Gaut.  Defendants objected to the use of Dr. Gaut's report, arguing that it was produced well after the close of discovery and thus should be stricken from the record.

Over one year later, on September 6, 2013, the district court ruled on Defendants' motion for summary judgment.  As an initial matter, it agreed with Defendants regarding Dr. Gaut's expert report, holding that because the case management order's discovery deadline referred to all discovery -- which the district court interpreted to mean both fact and expert discovery -- and Plaintiffs failed to produce the report before this deadline,[3] the

---

[3] The district court's opinion incorrectly noted that the deadline to conclude all discovery was December 31, 2011.  While this was the initial deadline as laid out in the case management order, on December 7, 2011, the court extended this deadline until March 31, 2012.  The parties then jointly requested that the deadline be extended even further -- until April 30, 2012.  The district court never actually granted this extension, instead dismissing it as moot on May 10, 2012.  Regardless of which date constituted the actual close of discovery (March 31 or April 30, 2012), Plaintiffs' disclosure of the report on May 21, 2012, was well beyond the

-10-

court would exclude all statements of material fact that relied on the report.

It also deemed admitted Paragraph 12 of Defendants' Statement of Uncontested Facts, which stated that "[w]hen Agent Jennette Rosado-Parrilla ('Rosado') was going to walk by the gate, Fernández grabbed her regulation firearm, tried to pull it from the holster and told Rosado that she could not go in." Though Plaintiffs denied this statement in their opposition papers, the court ruled that Plaintiffs' record citation to Fernández's deposition -- wherein Fernández gave a long narrative description of the events of October 9 and never mentioned an incident involving Rosado's gun -- was insufficient to support the denial.

Having dealt with these preliminary evidentiary issues, the district court moved to the merits. Looking to Fernández's arrest, the court explained that there was no constitutional violation because "the facts and circumstances within Rosado's knowledge would have led a prudent person into believing that Fernández committed a crime." Indeed, the district court found that two separate crimes were committed. First, "Fernández grabbed and tried to pull Rosado's firearm out of its holster," which, according to the court, "[u]ndoubtably" provides probable cause for arrest. Second, it held that because Fernández ran towards the School hallway and closed the hallway gate, Rosado could have

deadline.

-11-

concluded that Fernández was "obstructing police activity by restricting access to a school in which students were throwing objects at passing vehicles."

Turning next to Plaintiffs' excessive force claim, the district court held that it was "not unreasonable for Rosado to place Fernández face first toward a wall to effectuate the arrest" and there was "no evidence on the record that Rosado's technique did not comport with standard police practice or was more forceful than the norm." It added that "it was objectively reasonable for Rosado to prevent Fernández from escaping by pulling her away from other students." As a result, the court concluded that Fernández's constitutional rights were not violated, and thus the Supervisory Defendants were entitled to summary judgment.[4]

---

[4] The district court also granted summary judgment on Plaintiffs' Fifth, Ninth, and Fourteenth Amendment claims. Plaintiffs do not appeal the Ninth and Fourteenth Amendment claims, so we need not discuss them. As to the Fifth Amendment claim, it is unclear from Plaintiffs' brief whether or not they are appealing the issue. While Plaintiffs do mention Rosado's failure to provide Miranda warnings, the brief mention seems to be raised in the context of providing support for their Fourth Amendment claim and not in an attempt to appeal the Fifth Amendment claim. To the extent this was an attempt to appeal the issue, however, the appeal fails for two reasons. First, Plaintiffs fail to provide any legal argument or citations to support their argument, and thus it is deemed waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Second, the mere failure to provide Miranda warnings does not subject an officer to a § 1983 claim. See McConkie v. Nichols, 446 F.3d 258, 261 (1st Cir. 2006) ("Even where an officer questions a suspect in an unlawful manner, this does not necessarily mean that the questioning entitles the plaintiff to damages under section 1983; the Supreme Court has recognized that it would be inappropriate to impose tort liability every time an officer obtains an involuntary self-incriminating statement or the police

With all of the federal claims against the Supervisory Defendants disposed of, the district court next addressed the remaining claims under Puerto Rico law. The court explained that it was declining to exercise its supplemental jurisdiction, and thus dismissed the claims without prejudice.

As for Rosado, the district court required Plaintiffs to show cause by September 16, 2013, as to why, given its holdings that there were no constitutional violations, summary judgment should not be granted in Rosado's favor as well. At Plaintiffs' request, the district court allowed compliance through a motion for reconsideration. Plaintiffs filed this motion for reconsideration on October 7, 2013, and the district court denied it on March 31, 2014. After reaffirming the conclusions in its September 6, 2013, order, the district court held that Plaintiffs failed to show how Rosado violated Fernández's constitutional rights, and thus it dismissed all claims against Rosado with prejudice. This timely appeal followed.

## II.  Discussion

### A.  The Exclusion of Dr. Gaut's Expert Report

Plaintiffs first argue that the district court erred in excluding Dr. Gaut's expert report -- a report they claim was necessary in order to rebut Defendants' allegation that Fernández reached for Rosado's firearm -- because there was no firm discovery

---

fail to honor Miranda v. Arizona, 384 U.S. 436 (1966).").

-13-

deadline, and, even if there was, their failure to timely disclose the report was excusable due to Defendants' dilatory tactics. We disagree.

"A district court has wide discretion in choosing sanctions for discovery violations." Samaan v. St. Joseph Hosp., 670 F.3d 21, 36 (1st Cir. 2012). When the violation includes belated identification of experts or the disclosure of their opinions, "one customary remedy is preclusion." Genereux v. Raytheon Co., 754 F.3d 51, 59 (1st Cir. 2014). In determining whether such a remedy is appropriate, we apply a deferential abuse of discretion standard, granting the district court "considerable leeway." Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003); see also Genereux, 754 F.3d at 59-60; R.W. Int'l Corp. v. Welch Foods, Inc., 937 F.2d 11, 14 (1st Cir. 1991) ("In the ordinary course of civil litigation, '[t]he choice of sanctions for failing to comply with a court order lies with the district court, and we may not lightly disturb a decision to dismiss.'" (alteration in original) (quoting Velázquez-Rivera v. Sea-Land Serv., Inc., 920 F.2d 1072, 1075 (1st Cir. 1990))). In conducting this appellee-friendly review, we consider the totality of the circumstances. Genereux, 754 F.3d at 60.

Here, contrary to Plaintiffs' contention, there was a firm discovery deadline. On August 8, 2011, the court entered a case management order setting December 31, 2011 -- later extended

-14-

to March 31, 2012 -- as the deadline for <u>all</u> discovery.  The district court interpreted the use of "all" to be broad enough to encompass both fact and expert discovery, and in the absence of any further delineation of discovery deadlines, we agree with this interpretation.  Plaintiffs appear to have interpreted the case management order the same way, as their expert disclosures and related discovery were topics of conversation throughout the entire discovery period.  For example, at the December 1, 2011, status conference, Plaintiffs informed the magistrate judge and Defendants that they had retained Dr. Gaut as their police procedure/practice expert but that he was still waiting to review documents being sought in Plaintiffs' motions to compel.

Nevertheless, Plaintiffs failed to comply with the district court's deadline.  First, despite the court explicitly stating that the extended March 31, 2012, deadline was final and that "[n]o further extensions will be granted," the parties ignored this mandate and filed a joint motion seeking to extend the deadline until April 30.  Even assuming this extension was implicitly allowed, Plaintiffs ignored this new self-imposed deadline as well, failing to disclose the report until May 21.  Given that the district court had already warned that a party's failure to abide by the March 31 deadline "will result in preclusion," and that we have previously held that a litigants's failure to comply with their own self-imposed deadlines weigh

heavily against them, we are hard-pressed to find an abuse of discretion in the district court's decision to exclude the report.[5] See Cintrón-Lorenzo v. Departamento de Asuntos del Consumidor, 312 F.3d 522, 526 (1st Cir. 2002) ("[Plaintiff's] failure to achieve the time line that she herself had suggested weighs heavily against her."); Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 45-46 (1st Cir. 2002) ("[A] litigant who ignores case-management deadlines does so at his peril." (internal quotation marks omitted)).

Plaintiffs counter that even if the disclosure of Dr. Gaut's report was tardy, the failure was excusable due to Defendants' dilatory tactics. But Plaintiffs are unable to back up this contention. First, we note that the subpoenas and document requests were directed at the PRPD -- a non-party -- and not at Defendants. Plaintiffs point to no evidence that Defendants were controlling the PRPD's actions or were to blame for the PRPD's refusal to disclose documents.

---

[5] This is especially true when one considers that this was not the first time Plaintiffs had ignored the district court's orders regarding discovery. Remember, in April 2011, the district court denied Plaintiffs' motion to compel initial disclosures because Plaintiffs failed to comply with the court's meet and confer requirements. And then, in December 2011, Plaintiffs failed to respond to the district court's inquiry into the status of three pending discovery motions. Indeed, it was not until the district court issued a show cause order threatening to deny all three motions and to sanction Plaintiffs that Plaintiffs decided to respond.

Second, Plaintiffs informed the district court on December 23, 2011, that some of the requested documents had been produced and that the parties were working towards the rest of the production. The record contains no signs of a continued discovery dispute between the parties for almost three months, despite the district court informing Plaintiffs that they could re-file their motions to compel if necessary. And while Plaintiffs did file a motion to compel on March 27, 2012, that motion dealt with disciplinary and/or administrative files of police officers who were not parties to the action; there was no renewed motion to compel the documents allegedly necessary for Dr. Gaut's report.[6] Accordingly, even if Defendants were intentionally delaying the disclosure of necessary documents, there is nothing in the record suggesting that Plaintiffs timely brought the issue before the district court in an attempt to remedy the problem. See Colón-Millín v. Sears Roebuck de P.R., Inc., 455 F.3d 30, 39 (1st Cir. 2006) ("We do not minimize the significance of the defendants' discovery violation. Yet the failure . . . does not excuse the plaintiff from her failure to bring this discovery violation to the attention of the district court . . . .").

---

[6] Indeed, shortly after the March 27, 2012, motion to compel was denied (and the corresponding motions to quash were granted), Plaintiffs disclosed Dr. Gaut's expert report. That Dr. Gaut was able to complete and produce his report without the sought after documents suggests that even if the documents may have been helpful, they were far from necessary for its completion.

Third, Plaintiffs never sought to justify the delayed disclosure. When they filed their opposition to summary judgment, Plaintiffs simply referred to the report as if there was no timeliness issue. Even after Defendants lodged an objection to the report in their reply to Plaintiffs' opposition to summary judgment, Plaintiffs remained silent. This silence lasted over a year -- from the time Defendants filed their reply on June 29, 2012, until Plaintiffs filed their motion for reconsideration of the district court's order granting summary judgment on October 7, 2013. If Defendants truly were to blame, one would have expected a quick and forceful response by Plaintiffs.

In light of these circumstances, we find no abuse of discretion by the district court in excluding Dr. Gaut's expert report. If the report was really as important and necessary as Plaintiffs claim, and Defendants really were at fault, Plaintiffs would have complied with the discovery deadline, or promptly brought any issues to the district court if they could not. The district court was well within its discretion in concluding that simply ignoring the deadline and hoping nobody would notice was not an acceptable approach. See Young, 330 F.3d at 82-83 (holding that "a time-specific order was not cured by subsequent compliance at [the party's] leisure"); Tower Ventures, 296 F.3d at 45-46 ("[A] litigant who ignores case-management deadlines does so at his peril." (internal quotation marks omitted)).

**B. The Grant of Summary Judgment**

Plaintiffs next contend that the district court erred in granting Defendants' motion for summary judgment on Plaintiffs' Fourth Amendment claims. We review this grant de novo, drawing all inferences in the light most favorable to Plaintiffs, the non-moving party. Ramírez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014). In conducting this review, we review the record to determine whether there is any genuine dispute of material fact, and if there is not, whether Defendants are entitled to judgment as a matter of law. Id.; see also Fed. R. Civ. P. 56(a). Because the analysis is different for the two classes of Defendants -- Officer Rosado on the one hand and the Supervisory Defendants on the other -- and for the two alleged Fourth Amendment violations -- Fernández's unconstitutional arrest and Rosado's use of excessive force -- we address each separately.

### 1. Officer Rosado

#### i. The Arrest

The district court concluded that there was no Fourth Amendment violation because "the facts and circumstances within Rosado's knowledge would have led a prudent person into believing that Fernández committed a crime." In coming to this conclusion, the district court determined there was probable cause to arrest Fernández for two independent crimes: (1) grabbing Rosado's firearm

and attempting to pull it out of its holster; and (2) obstructing police activity by restricting access to the School.

Regarding the first -- grabbing and attempting to remove Rosado's firearm -- we agree with the district court that such an act would constitute probable cause to arrest Fernández. However, we cannot accept the district court's determination that this material fact was not in dispute. To help streamline the summary judgment process and create a simplified and easy way to navigate the record, the district court's local rules require a motion for summary judgment to "be supported by a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." D.P.R. R. 56(b). The party opposing summary judgment, meanwhile, must "submit with its opposition a separate, short, and concise statement of material facts" which "shall admit, deny or qualify the facts supporting the motion for summary judgment" and "support each denial or qualification by a record citation." D.P.R. R. 56(c). Here, Paragraph 12 of Defendants' statement of uncontested material facts stated that "[w]hen Agent Jennette Rosado-Parrilla ("Rosado") was going to walk by the gate, Fernández grabbed her regulation firearm, tried to pull it from the holster and told Rosado that she could not go in." Plaintiffs emphatically denied this fact in their counter-statement, stating as follows:

> It is plaintiff Valerie Fernández' testimony that this never happened. According to Valerie, defendant Jeanette Rosado spoke to her in a rough manner ("as if she was annoyed") and pushed her aside, Valerie told Rosado not to speak to her in such a rough tone, Rosado answered that she (Rosado) could speak to her (Valerie) in whatever way she felt, Valerie complained again about the rough manner in which Rosado was adressing [sic] her and it was then that Rosado shoved Valerie against a wall and placed a handcuff on her left wrist. Thus, according to Valerie Fernández, she was an innocent bystander who never touched defendant Rosado nor attempted to grab her gun, and that it was Rosado who exercised excessive force and subsequently arrested her without having any reason to do so.

As support, Plaintiffs cited to the specific pages of Fernández's deposition where her account of the encounter could be found.

Unlike the district court, we believe this citation was adequate to deny the alleged "uncontested" fact as required by Local Rule 56. Fernández was asked in her deposition to describe the events, and Fernández described what happened from her point of view. She never mentioned reaching for Rosado's gun, and nowhere did Defendants' counsel ask Fernández if she did. Given Fernández's complete silence on the issue, it is possible to read the deposition testimony as describing a version of events in which Fernández never reached for the gun. Indeed, because Plaintiffs are the ones opposing summary judgment, and all inferences must be drawn in their favor, that is exactly how the district court should

have interpreted it.[7]  See, e.g., Asociación de Periodistas de P.R. v. Mueller, 529 F.3d 52, 59 (1st Cir. 2008) (explaining that the appropriate standard is "whether plaintiff's [Fourth Amendment] claim survives in light of all the uncontested facts and any contested facts looked at in the plaintiff's favor" (alteration and emphasis in original) (internal quotation marks omitted)); Calvi v. Knox Cnty., 470 F.3d 422, 426 (1st Cir. 2006) ("The court must draw all reasonable inferences from the assembled facts in the light most hospitable to the nonmovant."). We conclude, therefore, that Paragraph 12 was adequately denied, thus creating a genuine dispute of material fact. In light of this dispute, any probable cause finding cannot, at this stage of the litigation, be based on Fernández reaching for Rosado's gun.

As to the district court's second basis for granting summary judgment -- that probable cause existed to believe that Fernández was obstructing police activity by restricting access to the school -- we disagree with the district court that the record contains the undisputed facts necessary to support a probable cause determination. An officer has probable cause to arrest an individual "if, at the moment of the arrest, the facts and

---

[7] To be sure, a better practice would have been for Plaintiffs to submit along with their opposition to summary judgment a sworn statement from Fernández explicitly denying ever reaching for Rosado's gun. That a different approach probably should have been taken, however, does not mean that the approach actually taken was insufficient.

-22-

circumstances <u>within the relevant actors' knowledge</u> and of which they had reasonably reliable information were adequate to warrant a prudent person in believing that the object of his suspicions had perpetrated or was poised to perpetrate an offense." <u>Roche</u> v. <u>John Hancock Mut. Life Ins. Co.</u>, 81 F.3d 249, 254 (1st Cir. 1996) (emphasis added); <u>see also</u> <u>Devenpeck</u> v. <u>Alford</u>, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.").

Here, taking into account the admitted portions of Defendants' statement of uncontested material facts, the record citations provided in support of them, and making all inferences in Plaintiffs' favor, Rosado was aware of the following facts at the time of Fernández's arrest: (1) a number of unidentified students were throwing objects from the School into the street separating the School from the housing project; (2) when the PRPD entered the School, all students -- both those who were throwing objects and those who were not -- began running; (3) Rosado came upon Fernández standing behind a closed gate blocking entry into the School's hallway; (4) Fernández opened the gate upon Rosado instructing her to do so. These facts, with nothing more, do not support any crime, let alone the alleged crime of restricting police activity by restricting access to the School, and thus probable cause for an arrest would be lacking.

The district court and Defendants emphasize, however, that there was more. They point out that Fernández admitted closing the gate, and by closing the gate, Fernández was obstructing the investigation, thus creating probable cause for her arrest. This would no doubt be true if Rosado knew that Fernández was the one who closed the gate. But while we now know that Fernández closed the gate, the record is silent as to whether or not Rosado knew that fact <u>at the time she arrested Fernández</u>. <u>See</u> <u>Roche</u>, 81 F.3d at 254 (holding that probable cause exists where "<u>at the moment of the arrest</u>, the facts and circumstances <u>within the relevant actors' knowledge</u> . . . were adequate to warrant a prudent person in believing that the object of his suspicions had perpetrated or was poised to perpetrate an offense" (emphasis added)). The only evidence cited by Defendants to establish that Fernández closed the gate is Fernández's own testimony. This after-the-fact admission, however, does nothing to support the probable cause determination because it does not prove Rosado's contemporaneous knowledge of that fact.[8] <u>See</u> <u>id.</u> (explaining that

---

[8] At oral argument, Defendants repeatedly directed us to Rosado's interrogatory responses, specifically her answer to Interrogatory 3, where Rosado stated that she "had been following two other officers and one of them told a female student to open a gate that she was trying to close in order to block the access." Had this fact and corresponding citation been included in Defendants' statement of uncontested material facts, the outcome today may very well have been different, since this fact could suggest that Rosado learned from the other officers that Fernández closed the gate. <u>See</u> <u>Morelli</u> v. <u>Webster</u>, 552 F.3d 12, 21 (1st Cir. 2009) (explaining that an officer may "act[] upon apparently trustworthy information"

-24-

the existence of probable cause "is not to be undertaken from the perspective of hindsight but from the perspective of a hypothetical 'reasonable man' standing in the reporting person's shoes at the time when that person acted."). Based on the summary judgment record, therefore, a genuine issue of material fact exists as to whether or not Rosado knew that Fernández closed the gate, and thus it was inappropriate for the district court to conclude as a matter of law that probable cause existed and no constitutional violation occurred. See Asociación de Periodistas de P.R., 529 F.3d at 56 ("Reversal is required if 'there existed any factual issues that needed to be resolved before the legal issues could be decided.'" (quoting Sabree v. United Bhd. of Carpenters & Joiners Local No. 33, 921 F.2d 396, 399 (1st Cir. 1990))).

This is not, however, the end of our discussion. Defendants posit that even if Rosado did violate Fernández's constitutional rights, summary judgment was still appropriate because Rosado is entitled to qualified immunity. We disagree.

"Qualified immunity is a doctrine that shields government officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate clearly

---

to "conclude that a crime has been or is about to be committed and that the suspect is implicated in its commission"); Roche, 81 F.3d at 254. Defendants, however, failed to include either the fact or the citation, thus preventing Plaintiffs the opportunity to deny or rebut Rosado's claim of knowledge and to present any contrary record support.

established statutory or constitutional rights of which a reasonable person would have known.'" Estate of Bennett v. Wainwright, 548 F.3d 155, 167 (1st Cir. 2008) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In assessing qualified immunity, we apply a two-prong analysis. Glik v. Cunniffe, 655 F.3d 78, 81 (1st Cir. 2011). First, we must decide "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right." Id. (quoting Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009)) (internal quotation marks omitted). Second, assuming a constitutional violation exists, we determine "whether the right was 'clearly established' at the time of the defendant's alleged violation." Id. (quoting Maldonado, 568 F.3d at 269) (internal quotation marks omitted). This second step is further divided into two inquiries:

> (a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he [or she] was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his [or her] conduct violated the right.

Mlodzinski v. Lewis, 648 F.3d 24, 32-33 (1st Cir. 2011). Notably, due to a somewhat recent change in the law, we may address these issues in any order. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

As discussed above, there are genuine disputes over material facts which prevent us from evaluating whether Rosado

violated Fernández's rights. Those same disputed facts also prevent us from evaluating the qualified immunity question. Even assuming probable cause for Fernández's arrest was lacking, thus satisfying the first requirement for qualified immunity, we would then look to whether the right was "clearly established" at the time of the violation. There is little question that it is clearly established law that an individual cannot be arrested absent probable cause. See, e.g., Kaupp v. Texas, 538 U.S. 626, 630 (2003) (per curiam); United States v. Mercedes-De La Cruz, ___ F.3d ___, 2015 WL 3378255, at *6 (1st Cir. May 26, 2015). However, whether or not a reasonable officer, similarly situated, would have understood that Rosado's actions violated this right is a fact-intensive question. It involves understanding what Rosado knew as she approached the gate and exactly what transpired upon Fernández opening it. These are questions for a factfinder, and until they are answered, we are unable to determine, as a matter of law, whether Rosado's "conduct was 'so deficient that no reasonable officer could have made the same choice[] under the circumstances.'" Estate of Bennett, 548 F.3d at 168 (quoting Napier v. Windham, 187 F.3d 177, 183 (1st Cir. 1999)); see also Maldonado, 568 F.3d at 272.

Accordingly, the district court's entry of judgment against Rosado on Plaintiffs' Fourth Amendment unconstitutional arrest claim must be reversed and remanded for trial.

### ii. The Use of Force

Plaintiffs are not as fortunate regarding their excessive force claim. "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). Accordingly, to establish a Fourth Amendment excessive force violation, Plaintiffs must show not only that Rosado employed force in arresting Fernández, but also that that level of force was objectively unreasonable under the circumstances. See Asociación de Periodistas de P.R., 529 F.3d at 59. In conducting this analysis, there is no "mechanical application" for us to follow. Graham, 490 U.S. at 396. Instead, we must pay

> careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he [or she] is actively resisting arrest or attempting to evade arrest by flight.

Id. We judge the "reasonableness" of an officer's actions from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.; see also Calvi, 470 F.3d at 428.

Assuming the encounter occurred as Fernández describes -- as we must in the summary judgment context -- Fernández was

seemingly arrested for, at best, obstructing a police investigation and/or disorderly conduct by "disrespecting" Rosado and talking back to her.  Either, obviously, is not a severe crime, and -- at least based on this version of events -- Fernández never posed an immediate threat to Rosado or others.  As such, only a minimal level of force by Rosado would be reasonable under the circumstances.  Yet even with this low threshold, Plaintiffs are unable to establish a constitutional violation.  In effectuating the arrest, Rosado shoved Fernández face-first against a wall and proceed to handcuff her left wrist.[9]  There is no evidence in the record that this technique deviated from standard police practice.  See Calvi, 470 F.3d at 428 ("Standard police practice [in Knox County, Maine] called for cuffing an arrestee's hands behind her back and [the officer's] decision not to deviate from this practice was a judgment call, pure and simple. . . .  That is the end of the story.").  And, even if it did, the Supreme Court has recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  Graham, 490 U.S. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)) (internal quotation marks).  Rosado's shove of Fernández may have been unnecessary, but it was not unreasonable.

---

[9]  Rosado did not handcuff Fernández's right wrist because Fernández wriggled free and slipped through the gate before Rosado could do so.

Similarly, there was no Fourth Amendment violation when Rosado pulled Fernández's arm, effectively creating a tug-of-war between Rosado and the other students. Fernández was attempting to escape arrest, and Rosado had a right to prevent Fernández from doing so. We see nothing unreasonable with Rosado's refusal to let go of Fernández or her decision to pull Fernández away from the other students trying to help her escape. See id. (explaining that whether an individual is "actively resisting arrest or attempting to evade arrest" is a relevant consideration in the use-of-force calculus).

Because Rosado never used excessive force during Fernández's arrest, there was no constitutional violation. Accordingly, the district court properly entered judgment for Rosado on this claim.

### 2. The Supervisory Defendants

Though Plaintiffs seem to also be appealing the entry of summary judgment in the Supervisory Defendants' favor, Plaintiffs offer no argument with respect to them. Rather, Plaintiffs' brief mentions Díaz only in the context of providing the factual background, and it is completely silent as to Figueroa and Caldero. Even when Defendants commented on this shortcoming in their opposition brief, Plaintiffs failed to address the issue in reply. We have held time and time again that "Judges are not expected to be mindreaders" and that "a litigant has an obligation 'to spell

-30-

out its arguments squarely and distinctly,' or else forever hold its peace." Rivera-Gómez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) (quoting Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990 (1st Cir. 1988)); see also Zannino, 895 F.2d at 17. Plaintiffs' failure to make any argument here -- let alone a developed one -- is fatal to their claim. See Zannino, 895 F.2d at 17 ("[W]e see no reason to abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Accordingly, Plaintiffs appeal as to the Supervisory Defendants is waived.

## C. The Puerto Rico Civil Code Claims

Finally, Plaintiffs object to the district court's decision to decline supplemental jurisdiction over their claims under the Puerto Rico Civil Code. When federal jurisdiction is premised on a federal claim and those federal claims are later dismissed, a district court has the option of declining to exercise its supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); see also, e.g., Desjardins v. Willard, 777 F.3d 43, 45 (1st Cir. 2015). If "the dismissal of the linchpin federal claim proves to have been improvident, [however,] the state-law claims routinely are reinstated." Van Wagner Bos., LLC v. Davey, 770 F.3d 33, 42 (1st Cir. 2014); see also Grajales v. P.R. Ports Auth., 682 F.3d 40, 50 (1st Cir. 2012). We see no

reason to deviate from that practice here, so we instruct the district court, on remand, to reinstate Plaintiffs' claims against Rosado under the Puerto Rico Civil Code.

### III. <u>Conclusion</u>

The purpose of summary judgment is to enable a court "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." <u>Acosta</u> v. <u>Ames Dep't Stores, Inc.</u>, 386 F.3d 5, 7 (1st Cir. 2004) (quoting <u>Wynne</u> v. <u>Tufts Univ. Sch. of Med.</u>, 976 F.2d 791, 794 (1st Cir. 1992)) (internal quotation marks omitted). In employing this useful and vital tool, the district court acted well within its discretion in excluding Dr. Gaut's expert report. It also correctly concluded that Defendants were entitled to judgment as a matter of law on Plaintiffs' excessive force claim. With respect to Plaintiffs' Fourth Amendment unconstitutional arrest claim against Rosado, however, the district court went too far. Plaintiffs provided just enough evidence to establish a genuine dispute over two key material facts -- whether Fernández reached for Rosado's gun and whether Rosado knew Fernández closed the gate barring entrance to the School hallway. The resolution of these disputed facts must be decided by a factfinder at an ensuing trial. And, because some of Plaintiffs' federal claims are being reinstated, the state law claims must be resurrected as well. These further proceedings only apply to Rosado, though, because

Plaintiffs have waived any appeal of the entry of summary judgment against the Supervisory Defendants.

**<u>AFFIRMED IN PART, REVERSED AND REMANDED IN PART</u>**.  Each party shall bear its own costs.